

# NUMBER 13-18-00225-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

MARIO VARGAS,                                                                    Appellant,

v.

THE STATE OF TEXAS,                                                              Appellee.

## On appeal from the 319th District Court
## of Nueces County, Texas.

# MEMORANDUM OPINION

**Before Chief Justice Contreras and Justices Longoria and Perkes
Memorandum Opinion by Justice Perkes**

Appellant Mario Vargas appeals his conviction of indecency with a child by contact, a second-degree felony. *See* TEX. PENAL CODE ANN. § 21.11. Appellant was sentenced to four years' incarceration. By what we construe as four issues, appellant contends that: (1) the evidence is legally insufficient to support a conviction; (2) the trial court abused its

discretion when it restricted appellant's voir dire on punishment ranges; (3) the trial court erroneously excluded defense witness testimony; and (4) the trial court abused its discretion by denying his motion for new trial. We affirm.

## I.  BACKGROUND

Appellant was indicted on one charge of continuous sexual abuse of a child under the age of fourteen, a first-degree felony, and one charge of aggravated sexual assault of a child by digital penetration, a first-degree felony. *See id.* §§ 21.02, 22.021. Appellant is the paternal grandfather of the complaining witness for both charges, I.V.[1] Appellant pleaded not guilty, and the case proceeded to trial on January 9, 2018.

### A.  State's Case-in-Chief

I.V., who was twelve years old at trial, testified that her parents, V.G. and M.V., were separated and that she and her two brothers would visit their father, M.V., in San Antonio "mainly during the summer," staying with him for "[a]bout a week." M.V. lived with his wife, son, and parents, appellant and C.V. According to I.V., appellant began touching her with "[h]is hand" "down in [her] private," the same area she uses to "pee," when she was six years old. I.V. said "[m]ost of the time it was underneath" the clothes.

I.V. testified to only one incident occurring in Corpus Christi. I.V. said that when she was ten years old, appellant and C.V. came into town, and V.G. took I.V. and her brothers to visit them at their hotel. On that day, I.V. said appellant touched her twice "on that part." In both instances, I.V. stated appellant asked her to sit on his lap before touching her. I.V. testified appellant "touched [her] on the outside of [her] clothes" on her

---

[1] We use initials for the minor and her family members in order to protect her identity. *See* TEX. R. APP. P. 9.8 cmt. ("The rule does not limit an appellate court's authority to disguise parties' identities in appropriate circumstances in other cases.").

"private" shortly after she arrived at the hotel while she was changing her shoes. In the evening, I.V. stated he did it again after she had gotten out of the pool. I.V. said he stopped when she said she had to go to the bathroom. I.V. then told her mother. "I remember—I think I was sitting down[,] and my mom had come up to me and asked me what was wrong, so I had told her." I.V. testified she had not told anyone prior because she was "scared" and was "afraid if [she] had told, no one would believe [her]" or her "brothers would be upset to not go visit [their] dad anymore."

On cross-examination, appellant asked I.V. to draw a map of the pool area and testify as to where she recalled everyone was, what she wore, and what towel she used. I.V. testified that she remembered she was wearing shorts and a bikini top and had her "my Little Pony towel" with her. She identified where appellant, her mother, grandmother, and aunt, D.V., were.

I.V. was confronted with a statement she made during an interview at the Child Advocacy Center (CAC). In the videotaped statement, I.V. stated appellant had touched her inappropriately, he stopped when she left for the bathroom, she returned and sat on her grandfather's lap again, and then she walked over to the pool to tell her mother.

V.G. testified she and M.V. had been separated for over ten years and because they "didn't talk," V.G. usually communicated with him through I.V.'s paternal grandparents. V.G. testified that on June 4, 2015, C.V. invited her and the children to their hotel to go swimming. Although she recalled seeing I.V. sit on appellant's lap, V.G. testified she did not see him touch her. V.G. testified that at some unspecified point, I.V. walked towards her and told her "that her grandfather had put his hands inside of her shorts . . . in her vagina." V.G. said she pulled her daughter into the pool with her once

3

she saw appellant walking in their direction. V.G. said she thereafter grabbed her children, left, and called the police as soon as she arrived home. An officer transported V.G. and I.V. to the hospital where I.V. underwent an examination.

Sandra Pardo, a sexual assault nurse examiner, testified I.V. had no signs of visible trauma. Pardo opined that it was "unlikely that there would be any trauma" given I.V.'s reported allegations. "Even with my sexual assaults that have had penile penetration, the majority of my patients do not have trauma at all," testified Pardo. According to Pardo, I.V. stated:

> 'I was sitting on my grandpa's lap and he started touching me down here.' (Patient indicates female sexual organ by pointing) 'with his hands. He was touching me under my clothes. He went on the inside and told me he was hurting me (sic.), and then he went on the outside. He was doing it when I was 7, when I would see him in the summer. He would do it when I was on his lap. He would touch me. He said he never gets to touch grandma that way.

As part of her examination of I.V., Pardo collected swab samples from I.V.

When the State rested its case-in-chief, the State announced it would be proceeding only on the aggravated sexual assault of a child charge.

## B.    Defense's Case-in-Chief

Robin Castro, a forensic scientist with the Texas Department of Public Safety crime laboratory, testified she analyzed the swabs obtained in the forensic exam. Castro determined that the genetic material on the swabs was "consistent with the DNA profile of [I.V.]," and appellant was "excluded as a contributor of the profile." Castro proffered that the changing of clothing or washing of the body will gradually remove any foreign DNA.

4

Defense DNA expert Dr. Robert Benjamin testified he reviewed the laboratory reports and though he agreed that "swimming in a pool, just like washing," was a "fair[ly] effective, but not a guaranteed, way of removing DNA from a surface," appellant's lack of DNA on the samples tested was probative. Benjamin testified, "[I]f it is determined that it would be very likely that had this occurred, that DNA should still be there."

C.V. and D.V. also testified. C.V. testified that I.V. appeared "excited to be there" visiting them at the hotel, whereas V.G. "seemed very distracted." C.V. said in the evening, I.V. had gotten out of the pool and "went to sit on [appellant's] leg, and he said something to the effect of: 'You're wet,' [and] got a towel." C.V. testified that I.V. sat "wrapped in the towel" "on the mesh part of the chair" between appellant's legs. C.V. said she was seated next to appellant, and they had been discussing whether to allow I.V. and her brothers to spend the night. "[Appellant] was saying, no, they could not stay . . . . And I was adamant that I wanted to see them." C.V. testified that, after some time, I.V. "head[ed] to the pool where her mom [was] swimming" and "lean[ed] down to talk to her mom." C.V. testified appellant then said he needed to "'go tell [V.G.] why they can't stay.'" C.V. said she turned to start collecting her belongings, and when she returned her attention to the pool area, she saw V.G. getting out of the pool with the children. C.V. testified she never observed appellant put his hand inside I.V.'s towel.

On cross-examination, C.V. admitted she had consumed "several drinks" and "probably wouldn't have driven a car, but [she] wasn't falling down, passing out, slurring drunk." C.V. also testified she had recently been arrested for driving while intoxicated.

D.V. testified that she was the only one not drinking. According to D.V., at some point in the evening, I.V. exited the pool and approached them. D.V. said she, C.V., and

5

appellant were seated in a "half[-]moon" formation in the pool area. D.V. said appellant "decided to wrap [I.V.] in her towel" because I.V. had been "complaining that she was cold." D.V. testified that I.V. "wanted to sit on his lap" but appellant said no, so she sat on the "edge of his chair." Then, I.V. went back to the pool and "whispered something to [V.G.], at which [sic] [appellant] approached them." D.V. said she saw V.G. "pull[] [I.V] into the pool with her, and [appellant] just stood up and said, 'Well, they're mad. . . . They want to stay, but I'm not letting them stay.'" D.V. testified that, based on her observations, appellant could not have gotten his hand into I.V.'s towel and into the shorts I.V. was wearing.

Ruby Stimson and Margaret Dunn, two of appellant's friends who were at the pool that day, also testified. Dunn testified that she and her husband had known appellant for at least twenty years and that her husband and appellant were Masons and Shriners together. Dunn opined that appellant had a reputation for being truthful and honest. Dunn said she remembered seeing I.V. go "up to [appellant] and—she was wet, and he had a towel, and he gave her the towel, and she sat there, very appropriately with [appellant]." Dunn explained she was seated about "one or two chairs over" from where appellant was seated, and she never saw appellant place his hand inside I.V.'s towel.

On cross-examination, Dunn was pressed as to whether she was testifying that no assault had occurred or that she simply had not witnessed an assault, and she maintained the former.

Stimson testified her husband grew up with appellant, and appellant had a reputation for being honest and trustworthy. Stimson could not recall whether appellant had been with anyone at the pool area in the evening but did remember V.G. telling her

6

that she and M.V. "wanted to get back together, but the only—the reason they weren't back together is because [appellant] was standing in the way of that."

## C. Outcome

The jury returned a guilty verdict on the offense of indecency with a child by contact, a lesser-included offense of aggravated sexual assault. Although appellant had initially elected to have the jury assess punishment, appellant and the State notified the court that the parties had reached an agreed recommended punishment of four years' incarceration. Appellant did not waive his right to appeal as part of this agreement. At a punishment hearing on January 19, 2018, the trial court assessed punishment at four years.

On February 16, 2018, appellant filed a motion for new trial, arguing (1) the trial court materially erred when it restricted appellant's "discussion of the unavailability of probation for the lesser-included offense of indecency with a child by contact" during voir dire; and (2) the jury engaged in juror misconduct. The State subsequently filed a motion to strike the attached juror affidavits which were attached to appellant's new trial motion. The trial court held a hearing on the motions on March 28, 2018. No order followed, and appellant's motion for new trial was denied by operation of law. *See* TEX. R. APP. P. 21.8(c). This appeal followed.

## II. SUFFICIENCY OF THE EVIDENCE

Appellant first argues the evidence was legally insufficient to convict him of the offense of indecency with a child by contact. *See id.* § 21.11.

**A.** **Standard of Review and Applicable Law**

In reviewing the sufficiency of the evidence to support a conviction, we consider the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Stahmann v. State*, 602 S.W.3d 573, 577 (Tex. Crim. App. 2020) (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)).

We consider both direct and circumstantial evidence as well as all reasonable inferences that may be drawn from the evidence. *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007). Circumstantial evidence is as probative as direct evidence in establishing guilt, and circumstantial evidence alone can be sufficient to establish guilt. *Nisbett v. State*, 552 S.W.3d 244, 262 (Tex. Crim. App. 2018); *Temple v. State*, 390 S.W.3d 341, 359 (Tex. Crim. App. 2013). "Each fact need not point directly and independently to the guilt of a defendant, as long as the cumulative force of all the incriminating circumstances is sufficient to support the conviction." *Walker v. State*, 594 S.W.3d 330, 335 (Tex. Crim. App. 2020) (citing *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007)). The uncorroborated testimony of either the child or an outcry witness is sufficient to support a conviction for indecency with a child or sexual assault of a child. *Jones v. State*, 428 S.W.3d 163, 169 (Tex. App.—Houston [1st Dist.] 2014, no pet.) (providing that courts give wide latitude to testimony provided by child victims of sexual abuse); *see* TEX. CODE CRIM. PROC. ANN. art. 38.07(a) ("A conviction under Chapter 21 . . . is supportable on the uncorroborated testimony of the victim of the sexual offense if the victim informed any person, other than the defendant, of the alleged offense within one year after the date on which the offense is alleged to have occurred."); *see also*

*Benson v. State*, No. 13-18-00450-CR, 2020 WL 4812635, at *10 (Tex. App.—Corpus Christi–Edinburg Aug. 13, 2020, pet. ref'd) (mem. op., not designated for publication). The State has no burden to produce any corroborating or physical evidence. *Gutierrez v. State*, 585 S.W.3d 599, 607 (Tex. App.—Houston [14th Dist.] 2019, no pet.). We resolve any evidentiary inconsistencies in favor of the verdict, keeping in mind that the jury is the exclusive judge of the facts, the credibility of the witnesses, and the weight to give their testimony. *Walker*, 594 S.W.3d at 335; *see* TEX. CODE CRIM. PROC. ANN. art. 38.04.

Sufficiency of the evidence is measured by the elements of the offense as defined by a hypothetically correct jury charge. *Metcalf v. State*, 597 S.W.3d 847, 856 (Tex. Crim. App. 2020) (citing *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997)). The hypothetically correct jury charge accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried. *Walker*, 594 S.W.3d at 336.

Here, a hypothetically correct charge would instruct the jury to find appellant guilty of indecency with a child by contact, the lesser-included offense of aggravated sexual assault, as alleged if the State establishes that appellant, with the intent to arouse or gratify his sexual desire, touched the genitals of I.V., a child younger than 17 years of age. *See* TEX. PENAL CODE ANN. § 21.11(a) (stating that a person commits an offense if the person engages in sexual contact with a child under the age of seventeen or causes the child to engage in sexual contact); *id.* § 21.11(c)(1), (2) (defining "sexual contact" as "any touching by a person, including touching through clothing, of the anus, breast, or any part of the genitals of a child").

9

**B.      Discussion**

The record reflects I.V. was ten years old when she outcried that appellant had been putting his hand "down there" for several years, with the most recent occurrence transpiring just minutes before. I.V. later relayed to Pardo the same information she had told her mother. That she could not recall two years later at trial whether she sought out her mother after returning from the restroom or if her mother came to her to ask if something was wrong does not affect the probative value of I.V.'s testimony. *See Walker*, 594 S.W.3d at 335. As the trier of fact, the jury was entitled to reconcile any inconsistencies between I.V.'s CAC video statements and her trial testimony. *See id.* The jury was likewise entitled to reconcile any contradictions between I.V.'s testimony and that which was provided by appellant's witnesses who claimed they saw no sexual assault. *See id.*; *Gutierrez*, 585 S.W.3d at 607; *Jones*, 428 S.W.3d at 169; *see also* TEX. CODE CRIM. PROC. ANN. art. 38.04.

On appeal, appellant chiefly argues the State presented no evidence of intent to arouse or gratify. However, intent is a question of fact and within the sole purview of the jury, and therefore, the jury may rely on its collective common sense and apply common knowledge and experience. *See Acosta v. State*, 429 S.W.3d 621, 625 (Tex. Crim. App. 2014). I.V. testified, "When I was little, I thought that's how he loved me. But when I started getting older, I figured out it was wrong." I.V. additionally told Pardo that appellant said "he never gets to touch grandma that way." From this evidence, the jury could infer that appellant acted with intent to arouse and gratify his own sexual desire when he touched I.V. *See Gonzalez Soto v. State*, 267 S.W.3d 327, 334 (Tex. App.—Corpus Christi–Edinburg 2008, no pet.) ("The jury could infer from the totality of appellant's conduct that

10

touching A.R.'s breast and genital area was done with the intent to arouse and gratify his sexual desire."); *Connell v. State*, 233 S.W.3d 460, 467 (Tex. App.—Fort Worth 2007, no pet.) (finding that the jury could infer intent from the way in which appellant touched complainant's "bottom" and that appellant's actions made complainant feel uncomfortable); *see also Spence v. State*, No. 05-19-00452-CR, 2020 WL 5056556, at *4–5 (Tex. App.—Dallas Aug. 27, 2020, no pet. h.) (mem. op., not designated for publication) (noting that child complainant's testimony that she "felt sad" when the defendant would "rub[] her body," because "'he was doing something that he wasn't supposed to'" was evidence that the defendant had acted with intent to arouse and gratify his own sexual desire).

Viewing the evidence in the light most favorable to the verdict, we conclude that there is sufficient evidence for the jury to find appellant guilty of engaging in indecency with a child by sexual contact. We overrule appellant's first issue.

## III.    RESTRICTED VOIR DIRE

Appellant next asserts that "the trial court erred during voir dire when it sustained the State's objection that defense counsel was attempting to instruct prospective jurors [that] probation was not a punishment option for Indecency with a child by contact."

## A.    Standard of Review and Applicable Law

The possible purposes of voir dire are: (1) to elicit information that would establish a basis for a challenge for cause because the venire member is legally disqualified from serving or is biased or prejudiced for or against one of the parties or some aspect of the relevant law; (2) to facilitate the intelligent use of peremptory challenges that may be "exercised without a reason stated, without inquiry and without being subject to the court's

11

control"; and (3) though it is not always legally legitimate, to indoctrinate the jurors on the party's theory of the case and to establish rapport with the prospective jury members. *Sanchez v. State*, 165 S.W.3d 707, 710–11 (Tex. Crim. App. 2005); *Chakravarthy v. State*, 516 S.W.3d 116, 128 (Tex. App.—Corpus Christi–Edinburg 2017, pet. ref'd). Trial courts have broad discretion over the jury-selection process. *Jacobs v. State*, 560 S.W.3d 205, 211 (Tex. Crim. App. 2018); *Barajas v. State,* 93 S.W.3d 36, 38 (Tex. Crim. App. 2002). We review a challenge to limitation of voir dire under an abuse-of-discretion standard of review. *Jacobs*, 560 S.W.3d at 216; *Sells v. State*, 121 S.W.3d 748, 755 (Tex. Crim. App. 2003). "To preserve error, appellant must show that he was prevented from asking *particular* questions that were proper." *Sells*, 121 S.W.3d at 756. A showing that "the trial court generally disapproved of an area of inquiry from which proper questions could have been formulated" is insufficient to preserve error "because the trial court might have allowed the proper question had it been submitted for the court's consideration." *Id.* (citing TEX. R. APP. P. 33.1(a)(1)(A)).

## B.      Discussion

The following, in relevant part, occurred during voir dire:

[APPELLANT]:        . . . I do want to talk to you a little bit about the punishment range on the allegations made against [appellant]. Now, really there are two types of allegations. One is what's call[ed] a continuous sexual abuse allegation. It requires at least two acts over a 30-day period. And the acts could be an aggravated sexual assault of a child, it could be an indecency with a child by contact. Those are the types of allegations that, again, your mind can just go wild with thinking about what are the possibilities involved with that.

But I ask that if you become a panel member that you be patient and wait until you hear the facts of the case, why is the allegation being made. But considering that,

12

the punishment range for continuous is 25 years to life. Is there anyone here that cannot consider that as punishment range? (No response).

And for an aggravated sexual assault, if the State were to prove that up, the punishment range is 5 to 99 years to life. Is there anybody here that can't consider that? (No response.)

Now, if the State were only able to prove the indecency with a child by contact—

[STATE]: Your Honor, may we approach?

THE COURT: Yes.

(Discussion held off the record.)

[APPELLANT]: [The State] was kind enough to approach the Court and lodge an objection about the line of questioning that I was using, and that objection has been sustained, so we're going to move on. I want to talk to you now—

THE COURT: And before you move on, just so that I can—and I know defense counsel has let you know this, but I want to reiterate it. I expect one side or the other to make objections if they think it's appropriate, because as you see, everything we do is being taken down on the record, just in case it's going to be appealed in one way, shape, or form and there's going to be a reviewing point. So please don't concern yourself if I ask the attorneys to come up, or say "Approach," or if I sustain an objection, other than if I sustain an objection, that means that you are not to consider . . . .

The record does not reflect the specific question appellant sought to ask but was prohibited from asking, and even assuming the trial court generally disapproved of an area of inquiry from which proper questions could have been formulated, that is not enough to preserve error. *See Sells*, 121 S.W.3d at 756; *Santiesteban-Pileta v. State*, 421 S.W.3d 9, 16 (Tex. App.—Waco 2013, pet. ref'd). Thus, appellant has failed to preserve this issue for our review. *See Sells*, 121 S.W.3d at 756; *Mohammed v. State*,

13

127 S.W.3d 163, 169–70 (Tex. App.—Houston [1st Dist.] 2003, pet. ref'd) (finding the appellant failed to preserve error because although he sought to question about "the lesser-included offenses, as well as the punishments for them," the record did not show that he was prevented from asking a particular, proper question); *see also Robinson v. State*, No. 04-17-00397-CR, 2018 WL 5808222, at *2 (Tex. App.—San Antonio Nov. 7, 2018, no pet.) (mem. op., not designated for publication) (concluding Robinson failed to preserve error because "[t]he record does not reflect defense counsel responded to the objection or objected to the trial court's instruction," and the "record also does not reflect any specific questions that Robinson sought to ask but was prohibited from asking"); *Cornejo v. State*, No. 01-16-00250-CR, 2017 WL 3389912, at *3 (Tex. App.—Houston [1st Dist.] Aug. 8, 2017, no pet.) (mem. op., not designated for publication) (concluding appellant had waived complaint that trial court erroneously limited his counsel's ability to explain possible community service conditions where State interjected with an objection to defense counsel's explanation and defense moved forward with questioning, never stating his specific question on record); *cf. Quezada v. State*, 553 S.W.3d 537, 543 (Tex. App.—El Paso 2018, no pet.) (finding the "requirement of a specific question is unnecessary" and issue preserved for review where on record "Defense Counsel attempted to question the venire on probation but was told categorically he could not discuss probation, and because he created a bill of exceptions"). We overrule appellant's second issue.

## IV.    TESTIMONY EXCLUSION

By appellant's third issue, he argues he was precluded from "presenting a defense" when the trial court excluded testimony made by defense witness, C.V., on the basis that the testimony was hearsay.

## A.    Standard of Review and Applicable Law

We review a challenge to the trial court's admission or exclusion of evidence for an abuse of discretion. *Johnson v. State*, 490 S.W.3d 895, 908 (Tex. Crim. App. 2016); *Trevino v. State*, 228 S.W.3d 729, 748 (Tex. App.—Corpus Christi–Edinburg 2006, pet. ref'd) (Castillo, J., concurring).

"A defendant has a fundamental right to present evidence of a defense as long as the evidence is relevant and is not excluded by an established evidentiary rule." *Henley v. State*, 493 S.W.3d 77, 83 (Tex. Crim. App. 2016) (quoting *Miller v. State,* 36 S.W.3d 503, 507 (Tex. Crim. App. 2001)). Hearsay is a written or oral statement, other than one made by the declarant while testifying at the trial or hearing, offered into evidence to prove the truth of the matter asserted; and as such, hearsay is inadmissible evidence unless expressly excepted or excluded from this general rule by statute or the rules of evidence. *See* TEX. R. EVID. 801(a), (d); R. 802. "If the out-of-court statement is relevant only if the trier of fact believes that the statement was both truthful and accurate, then the statement is hearsay." *Coble v. State*, 330 S.W.3d 253, 290 n.101 (Tex. Crim. App. 2010) (quoting *Bell v. State*, 877 S.W.2d 21, 24 (Tex. App.—Dallas 1994, pet. ref'd)); *Jones v. State*, 466 S.W.3d 252, 263 (Tex. App.—Houston [1st Dist.] 2015, pet. ref'd). But if the relevancy of the statement does not hinge on the truthfulness of the statement, it is not hearsay. *Coble*, 330 S.W.3d at 290 n.101; *Jones*, 466 S.W.3d at 263; *see also Merritt v. State*, No. 12-17-

00303-CR, 2018 WL 5023590, at *3 (Tex. App.—Tyler Oct. 17, 2018, no pet.) (mem. op., not designated for publication).

In general, a hearsay objection is sufficiently specific to require the offering party to show that the evidence is not hearsay or that it is admissible under an exception to the hearsay rule. *See Castillo v. State*, 573 S.W.3d 869, 877 (Tex. App.—Houston [1st Dist.] 2019, pet. ref'd) (citing *Cofield v. State*, 891 S.W.2d 952, 954 (Tex. Crim. App. 1994) (en banc)); *see also White v. State*, 549 S.W.3d 146, 160 (Tex. Crim. App. 2018) (Keller, J., concurring) ("For hearsay, . . . which is a rule of exclusion, we have held that the opponent of the evidence bears the burden to show that evidence is hearsay, but once hearsay is shown, the proponent bears the burden of establishing an exemption or exception to the hearsay rule.").

## B.    Discussion

Appellant asserts that the testimony he sought to admit was not hearsay. The record, in applicable portion, appears below:

| [APPELLANT]: | And what did you observe with her? |
|---|---|
| [C.V.]: | [V.G.] seemed very distracted, she was on her cell phone a lot, she wasn't conversing very much, she made a statement to me that my son would take her back if he— |
| [STATE]: | Your Honor, I'm going to object to hearsay again. |
| THE COURT: | Sustained. |
| [APPELLANT]: | Your Honor, I'm not offering it for the truth of the matter asserted. Basically to show the state of mind or to show, possibly even with her, a situation where it might be more of a motive to fabricate. We're certainly not offering it for the truth of the matter asserted in this case. |

16

THE COURT: I guess I have to hear the statement. Can you take the jury out[?]

THE BAILIFF: Yes, sir. All rise for the jury.

(Jury exits courtroom.)

THE COURT: Okay. You[]all can have a seat and ask the question, and then let me hear the answer.

[APPELLANT]: Did she say anything that seemed unusual or odd to you?

[C.V.]: Almost very shortly after we got to the pool area, [V.G.] told me that she had been talking to my son, and that if she would take him back, he would leave his wife . . . and their child.

THE COURT: Okay. All right. Are you going to ask any other questions like that? Just so I can hear them now without having the jury [sic] back in the room.

[APPELLANT]: No.

THE COURT: So what's your objection to that?

[STATE]: Your Honor, my objection is it's hearsay. It's clearly for the truth of the matter asserted. If that's the theory, that she made it up because [appellant], the defendant, was in the way of her relationship, it's definitely for the truth of the matter that [V.G.] believed this statement, that she had opportunity to get back together with [M.V.]. If that's her motive, then that's truly for the truth of the matter asserted.

. . . .

[APPELLANT]: It doesn't matter what [V.G.] believed, Your Honor. It matters what—what we're offering it for is not for [V.G.'s] belief in the matter, but we're actually offering it for the fact how [C.V.] perceived and what was told to her. [C.V.] didn't believe it. We don't believe that that's true. We're not offering it to say that he was going to leave—that [M.V.] was going to leave his wife and go back with [V.G.].

17

THE COURT:        And so what is the purpose that you're offering it for?

[APPELLANT]:      Basically, Your Honor, to show that her motive—[V.G.'s] motives—her bias, her desire to still have, possibly have—but the bias against [appellant] and the motive to fabricate the allegations. It's certainly showing—I mean, what she had told the other one, what—I mean, these are all in the context of a few minutes or a few hours of each other, but it would show the bias towards [appellant] and it would show the bias towards—that she still—you know, in this case, wanting—still having some desire to get back with the son and telling the other—she told Ruby the only reason she wasn't with the son was because she—because of [appellant]. It's basically to show her willingness to fabricate a story and her willingness to . . .[2] And I think it would be part of our belief that she wanted him out of the way, [appellant] out of the way, so that possibly she could get back with the son.

THE COURT:        I'm going to sustain the objection. I think that is for the truth of the matter asserted.

On appeal, appellant maintains that the evidence in question went to V.G.'s motive for fabricating the accusations against appellant—not the truth of the matter asserted, i.e., that V.G. and M.V. were looking to reunite but for appellant's interference—and therefore, it was not hearsay. Appellant cites three cases in support of this proposition: *Kimball v. State*, 24 S.W.3d 555, 564 (Tex. App.—Waco 2000, no pet.); *Pritchett v. State*, 874 S.W.2d 168, 175 (Tex. App.—Houston [14th Dist.] 1994, pet. ref'd), *overruled by Sarmiento v. State*, 93 S.W.3d 566 (Tex. App.—Houston [14th Dist.] 2002, pet. ref'd); and *Headley v. State*, No. 01-02-01271-CR, 2004 WL 1277431, *5 (Tex. App.—Houston [1st

---

[2] Ellipsis in original.

18

Dist.] June 10, 2004, pet. ref'd) (mem. op., not designated for publication). We find the cases inapplicable.[3]

Despite what appellant contends, the probative value of the message here—that V.G. is incentivized to falsify allegations of abuse because she said she and M.V. would reconcile but for appellant's disapproval—is dependent on the truthfulness or accuracy of the matter asserted. *See* TEX. R. EVID. 801(c) (defining "matter asserted" as "any matter a declarant explicitly asserts" as well as "any matter implied by the statement if the probative value of the statement as offered flows from the declarant's belief about the matter"); *Jones*, 466 S.W.3d at 263; *Lozano v. State*, 359 S.W.3d 790, 820 (Tex. App.—Fort Worth 2012, pet. ref'd) (concluding that, because the testimony "was relevant only if the trier of fact believed that Dr. Donoghue's statement was both truthful and accurate," the statement was offered to prove the truth of the matter asserted and inadmissible); *cf.*

---

[3] In *Pritchett*, the State was allowed to introduce an unprompted statement made by the appellant shortly after his arrest, wherein he stated that "[a]ll these snitches are making your job too easy." *Pritchett v. State*, 874 S.W.2d 168, 174 (Tex. App.—Houston [14th Dist.] 1994, pet. ref'd), overruled by *Sarmiento v. State*, 93 S.W.3d 566 (Tex. App.—Houston [14th Dist.] 2002, pet. ref'd). Our sister court held that, although the issue had not been preserved for review, the statement was not hearsay. *See id.*; *see also* TEX. CODE CRIM. PROC. ANN. art. 38.22 (governing the admission of statements made by an accused at trial); TEX. R. EVID. 801(e)(2) (allowing for the admission of statements made by party-opponent). The statement at-issue here, however, was not made by a party-opponent.

In *Kimball*, over Kimball's hearsay objection, the trial court allowed the State to admit testimony of the out-of-court conversations between an officer and an unidentified 911 operator reporting a possibly intoxicated driver. *Kimball v. State*, 24 S.W.3d 555, 564 (Tex. App.—Waco 2000, no pet.). The court determined the background exception applied because such testimony was necessary for the jury's understanding of the events which occurred before the traffic stop. *See id.*; *see also Langham v. State*, 305 S.W.3d 568, 577 (Tex. Crim. App. 2010) (explaining that "out-of-court statement may be admissible, though testimonial, if it is *not* offered for the truth of the matter asserted, but only to supply 'background,' *e.g.*, to provide the investigative context in order to explain police conduct"). Appellant has not provided us with, nor have we independently found, caselaw applying the background principle outside of the law enforcement context, and we decline to extend it now.

Finally, in *Headley*, the appellate court determined the challenged statement at issue *was* hearsay, but it fell under the "excited utterance exception" which rendered its admission into evidence permissible. *See Headley v. State*, No. 01-02-01271-CR, 2004 WL 1277431, at *5 (Tex. App.—Houston [1st Dist.] June 10, 2004, pet. ref'd) (mem. op., not designated for publication); *see also* TEX. R. EVID. 803 (providing "excited utterance" as an exception to the rule against hearsay). Appellant does not raise this exception here.

*Boykin v. State*, No. 05-13-00839-CR, 2015 WL 2250115, at *6 (Tex. App.—Dallas May 12, 2015, pet. ref'd) (mem. op., not designated for publication) (providing that where the relevance of statements "did not turn on their accuracy," the statements were not offered to prove the truth of the matter asserted). Thus, the statement is hearsay, and the trial court did not abuse its discretion in excluding the statement. *See Coble*, 330 S.W.3d at 290 n.101; *Jones*, 466 S.W.3d at 263. We overrule appellant's third issue.

## V.    MOTION FOR NEW TRIAL

By his last issue, appellant argues the trial court abused its discretion in denying his motion for new trial where there was evidence of juror misconduct, namely: (1) "the jury violated the court's instructions and considered punishment during guilty or innocence deliberations"; and (2) a juror's reading of her notes "amounted to an outside influence during deliberations." The State responds, in relevant part, that appellant's claim fails because his motion for new trial challenged the internal, deliberative jury process and not outside influences on the jury as required under Rule 606(b). *See* TEX. R. EVID. 606(b).

### A.    Standard of Review and Applicable Law

To receive a new trial based on jury misconduct, an appellant must show not only that jury misconduct occurred, but also that it was material and probably caused injury. *Garcia v. State*, 592 S.W.3d 590, 599 (Tex. App.—Eastland 2019, no pet.) (citing *Ryser v. State*, 453 S.W.3d 17, 39 (Tex. App.—Houston [1st Dist.] 2014, pet. ref'd)). We review a trial court's denial of a motion for new trial under an abuse of discretion standard and decide whether its decision was arbitrary or reasonable. *McQuarrie v. State*, 380 S.W.3d 145, 150 (Tex. Crim. App. 2012); *Mata v. State*, 517 S.W.3d 257, 267 (Tex. App.—Corpus

20

Christi–Edinburg 2017, pet. ref'd). A trial court abuses its discretion in denying a motion for new trial when no reasonable view of the record could support the trial court's ruling. *McQuarrie*, 380 S.W.3d at 150.

A defendant bears a heavy burden in challenging the verdict on the basis of jury misconduct because no witness can testify to the jury's deliberative process or the factors influencing a juror's decision. *See* TEX. R. EVID. 606(b); *Cabrales v. State*, No. 08-19-00199-CR, \_\_\_ S.W.3d \_\_\_, \_\_\_, 2020 WL 3530232, at *2 (Tex. App.—El Paso June 30, 2020, no pet.); *see also Villegas v. State*, No. 13-05-371-CR, 2008 WL 2515879, at *12 (Tex. App.—Corpus Christi–Edinburg Mar. 13, 2008, pet. ref'd) (mem. op., not designated for publication). An exception to the general rule, however, permits testimony if it pertains to whether an outside influence was "improperly brought to bear on any juror" or "to rebut a claim that the juror was not qualified to serve." TEX. R. EVID. 606(b)(2); *see McQuarrie*, 380 S.W.3d at 154; *see also* TEX. R. APP. P. 21.3(b), (g) (providing, in part, that a "defendant must be granted a new trial, or a new trial on punishment" when "the court has misdirected the jury about the law or has committed some other material error likely to injure the defendant's rights" or "when the jury has engaged in such misconduct that the defendant did not receive a fair and impartial trial"). The trial court may not receive a juror's affidavit or evidence of a juror's statement except on these matters. *See* TEX. R. EVID. 606(b).

Although Rule 606(b) does not define "outside influence," in *McQuarrie*, the court of criminal appeals explained that an "outside influence" is "something originating from a source outside of the jury room and other than from the jurors themselves." 380 S.W.3d at 154. "But the outside influence exception does not include influences such as coercion

21

by a fellow juror or the discussion of a juror's own personal knowledge." *Colyer v. State*, 428 S.W.3d 117, 125 (Tex. Crim. App. 2014).

**B.      Discussion**

Two juror affidavits were attached to appellant's motion for new trial.[4] The first juror affidavit stated:

> I thought the case presented by the District Attorney's Office was weak. The evidence was not that good. I had a hard time believing the girl.
>
> . . . .
>
> I was under the impression that the jurors would determine the sentence in the case. I was the last juror to hold out for not guilty. Finally, I agreed because I believed we would determine the sentence. I did not believe the defendant deserved jail. I only agreed to the lesser included offense because I could vote for probation. I only voted guilty because I thought the defendant could get probation. I had the worst feeling after I learned the defendant was going to jail. If I had it to do over again[,] I would have insisted on a NOT GUILTY.
>
> I would have voted not guilty if I had known probation was not available. We had asked what the sentence would be on the lesser charge and the judge would not tell us.[5] I was hoping the defendant would get probation.

The second juror affidavit read:

> One of the jurors absolutely referred to her notes. In fact, she had pages of notes. She referred to her notes during deliberations. There was one instance I sent out for the transcript because I thought her notes were wrong.

---

[4] Appellant also attached affidavits by trial counsel and an intern.

[5] Three jury notes were submitted prior to the verdict. Note one stated: "Can we have a copy of [I.V.'s] testimony? What is the penalty for the lesser charge?" The trial court responded in writing: "(1) Not unless you disagree as to a specific part of her testimony. (2) Please refer to paragraph 13 of the charge." Paragraph thirteen of the charge read: "At this stage of the trial, the jury will restrict its deliberations solely to the issue of guilt or innocence."

Note two stated: "9 to 3 Cant not [sic] get there with this info. (Evidence)[.]" The trial court instructed the jury: "Pls [sic] continue to deliberate."

Note three stated: "Did [I.V.] say [appellant] touched her skin, under shorts? We are in disagreement on this topic. Some jurors state she did not state her skin was touched under her shorts as it says in her SANE statement." The trial court responded: "See attached." The charge of the court was attached.

During deliberations there were three jurors [that] had they known probation was not available to the defendant[,] they would have voted not guilty. I would have voted not guilty if I had known probation was not available. When I later learned the defendant was going to prison for two to four years[,] I wished I had stuck to my not guilty vote. We had asked what the sentence would be on the lesser charge and the judge would not tell us. I was hoping the worst-case scenario for the defendant would be probation.

The affidavits fail to establish that an outside influence was improperly brought, which is the only Rule 606(b) exception argued before the trial court and on appeal.[6] *See* TEX. R. EVID. 606(b)(2)(A). Neither the jurors' purported misunderstanding about the appellant's eligibility for probation nor the fact that a juror "referred to" her note taking constitute an improperly brought outside influence. *See McQuarrie*, 380 S.W.3d at 151 ("The plain language of Rule 606(b) indicates that an outside influence is something *outside of both the jury room and the juror.*" (quoting *White v. State,* 225 S.W.3d 571, 574 (Tex. Crim. App. 2007) (emphasis added))); *Dunklin v. State*, 194 S.W.3d 14, 20 (Tex. App.—Tyler 2006, no pet.) (concluding that where, by affidavit, a "juror stated that he and two other jurors did not believe Appellant was guilty, but agreed to the guilty verdict because the other jurors promised to give Appellant probation with no jail time," the trial court properly excluded the affidavit under Rule 606(b) and denied appellant's motion for new trial); *see also Almaguer v. State*, No. 13-14-00312-CR, 2015 WL 5602267, at *5 (Tex. App.—Corpus Christi–Edinburg June 25, 2015, pet. ref'd) (mem. op., not

---

[6] Defense counsel's affidavits also go into detail about the jury's deliberations and how the jury determined punishment. The affidavits contain the indirect statements of other jurors and describe the jury's collective thoughts. The affidavits, in other words, impart the jury's deliberative processes, and Rule 606(b) barred the trial court from considering their contents. *See* TEX. R. EVID. 606(b)(2); *Bjorgaard v. State*, 220 S.W.3d 555, 558 (Tex. App.—Amarillo 2007, pet. ref'd) ("Describing the collective thought of the jurors is nothing more than imparting their deliberative processes."); *see also Fino v. State*, No. 05-17-00169-CR, 2018 WL 3829781, at *17 (Tex. App.—Dallas Aug. 13, 2018, pet. ref'd) (mem. op., not designated for publication).

designated for publication) (concluding that the jury's consideration of the law of parties, although not authorized by the charge, was not an "outside influence" improperly brought to bear against the jury so as to provide an exception to allow the trial court's consideration of juror affidavits in a motion for new trial); *Ozuna v. State*, No. 04-99-00382-CR, 2001 WL 303322, at *5 (Tex. App.—San Antonio Mar. 30, 2001, pet. ref'd) (mem. op., not designated for publication) (concluding that the jurors' "misunderstanding about the [defendant's] eligibility for probation is not an outside influence which was improperly brought to bear upon any juror"); *Ellison v. State*, No. 03-98-00602-CR, 2000 WL 5011, at *5 (Tex. App.—Austin Jan. 6, 2000, pet. ref'd) (mem. op., not designated for publication) (concluding that testimony at a motion for new trial hearing "that probation had been discussed during the jury's deliberations at the guilt stage" and that one juror "would have voted 'not guilty' had she known that appellant would not be eligible for probation," was inadmissible under Rule 606(b)). Therefore, Rule 606(b) bars the trial court's consideration of the aforementioned, and absent evidentiary support for juror misconduct, the trial court did not err in denying appellant's motion for new trial. *See Ex parte Parra*, 420 SW3d 821, 827 (Tex. Crim. App. 2013); *Mata*, 517 S.W.3d at 268–69. We overrule appellant's fourth issue.

## VI. CONCLUSION

We affirm the trial court's judgment.

GREGORY T. PERKES
Justice

Do not publish.
TEX. R. APP. P. 47.2(b).

Delivered and filed the
19th day of November, 2020.