

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

---

### NO. PD-1411-16

---

**JOSHUA JACOBS, Appellant**

**v.**

**THE STATE OF TEXAS**

---

### ON STATE'S PETITION FOR DISCRETIONARY REVIEW
### FROM THE SIXTH COURT OF APPEALS
### BOWIE COUNTY

---

KEASLER, J., delivered the opinion of the Court, in which KELLER, P.J., and HERVEY, YEARY, and WALKER, JJ., joined. YEARY, J., filed a concurring opinion, in which HERVEY, J., joined. NEWELL, J., filed a concurring opinion, in which ALCALA, J., joined. RICHARDSON, J., filed a dissenting opinion. KEEL, J., concurred.

### O P I N I O N

Joshua Jacobs was prohibited from asking potential jurors whether, if they knew that he had previously been convicted of a "sexual offense," they could remain impartial in the instant sexual-assault case.[1] The trial judge wanted Jacobs to use the phrase "felony

---

[1] *Jacobs v. State*, 506 S.W.3d 127, 132 (Tex. App.—Texarkana 2016).

offense," but agreed, on Jacobs's request, to let him refer to prior "assaultive offenses" instead.[2] The court of appeals held that, in so limiting Jacobs, the trial judge offended his constitutional rights.[3] We disagree.

## I. FACTS

Twelve-year-old "Victoria Whiteman"[4] (V.W.) told multiple people that Jacobs had "kissed" and "licked" her chest and "put his finger in [her] privates." A nurse examiner found injuries on one of V.W.'s labia consistent with this type of abuse, and Jacobs's DNA was found on V.W.'s nipple. Neither Jacobs nor V.W. could be excluded as contributors to a two-source DNA sample taken from underneath Jacobs's fingernails. Jacobs was charged with aggravated sexual assault of a child by digital penetration of V.W.'s sexual organ.[5]

Unfortunately for Jacobs, this was not the first allegation of sexual misconduct with a child that had been leveled against him. In 2010, Jacobs pleaded guilty to "Felony Carnal Knowledge of a Juvenile," a felony offense (as its name would suggest) under the laws of the State of Louisiana.[6] As a result, Jacobs would almost certainly be assessed an automatic

---

[2] *Id.*

[3] *Id.* at 139.

[4] *See* TEX. CODE CRIM. PROC. ch. 57 (allowing the use of pseudonyms in certain sex-offense-related prosecutions).

[5] TEX. PENAL CODE § 22.021(a)(1)(B)(I), (2)(B).

[6] *See* LA. R.S. 14:80.

life sentence if he was found guilty of the instant offense.[7] And, by dint of Article 38.37 of the Texas Code of Criminal Procedure, the jury deciding his guilt or innocence would likely learn of this prior offense and be instructed that they could use it as evidence, not only of his character, but also of any "acts performed in conformity" therewith.[8]

## A. Trial

Jacobs therefore quite understandably wanted to identify any potential jurors who, because of an implicit or explicit bias against repeat sexual offenders, would not hold the State to its burden of proving the instant offense beyond a reasonable doubt. To that end, he assembled a series of PowerPoint slides for his voir dire, each bearing the heading, "Innocent UNLESS Proven Guilty."[9] These slides strongly suggested that the State would introduce evidence that Jacobs had previously committed some as-yet-unspecified "unrelated sexual offense."[10] Specifically, the slides asked, with respect to each successive element of aggravated sexual assault, whether the responding juror would, or "would not[,] require the State to prove beyond a reasonable doubt [a particular element], if evidence of an unrelated sexual offense is proven beyond a reasonable doubt?"[11]

---

[7] *See* TEX. PENAL CODE § 12.42(c)(2).

[8] *See* TEX. CODE CRIM. PROC. art. 38.37, § 2(b).

[9] *Jacobs*, 506 S.W.3d at 131.

[10] *Id.*

[11] *Id.*

The trial judge, evidently concerned about "poisoning the jury pool and busting the panel," placed the following limitation on Jacobs's voir dire:

> I'm going to allow all six of those questions. I think the only thing I'm going to do, though, is require you to take out that it's a sexual offense. You can substitute felony offense or just offense period, but the fact that it's a sexual offense I'm going to prohibit you from using that language during your voir dire, on those specific questions.

In response to this proposed restriction, Jacobs's counsel proffered the following compromise: "[Given] that the Court is ruling that way, can I use assaultive offense?" To this request, the trial judge assented. So Jacobs conducted his Article 38.37 voir dire by referring primarily to prior "assaultive" offenses. But sometimes he made his point, as the trial judge evidently preferred, by talking about "unrelated offenses" more generally, without any kind of subject-matter qualifiers:

> But here's the important part guys, any unrelated offense[] doesn't change the State's burden of proof. They still have to prove each element beyond a reasonable doubt, okay? No matter what other evidence they put in, the burden of proof doesn't change. It never changes. Does everybody understand that? Okay.

Nobody on the venire panel indicated that they would hold the State to a lesser burden upon a showing that Jacobs had previously committed an "unrelated" offense.

Jacobs was ultimately found guilty of aggravated sexual assault of a child. He pleaded "true" to the prior-offense enhancement, and the trial judge assessed a life sentence.

**B. Appeal and Discretionary Review**

The Sixth Court of Appeals concluded that the trial judge abused his discretion in

preventing Jacobs from describing the potentially admissible prior convictions as "sexual offense[s]."[12]   Citing our 2014 opinion in *Easley v. State*,[13] the court then went on to determine whether this particular abuse of discretion "was a constitutional error or a nonconstitutional error."[14]   The court of appeals resolved that issue as follows:

> Jacobs was not allowed to question the jury panel about whether they would require the State to prove all the elements of the charged offense, or if it would find Jacobs guilty of the charged offense if the State only proved a lesser, uncharged offense. By preventing him from asking these questions of the jury panel, the trial court prevented him from determining if any potential juror(s) should be struck for cause. We agree with our sister courts of appeal that having an unqualified veniremember on the jury is a violation of the defendant's right to an impartial jury. Therefore, we find the error in this case is constitutional error that requires a Rule 44.2(a) analysis.[15]

Applying this standard, the court found that the trial judge's error was harmful and reversed Jacobs's conviction.

In its petition for discretionary review, the State does not contest the court of appeals' conclusion that the trial court erred. Instead, the State argues that the court of appeals "was wrong to conclude that the error was constitutional in dimension." We granted the State's petition to review this limited aspect of the court of appeals' opinion.

## II.  PROCEDURAL ISSUES

---

[12]  *Jacobs*, 506 S.W.3d at 137.

[13]  424 S.W.3d 535 (Tex. Crim. App. 2014).

[14]  *Jacobs*, 506 S.W.3d at 133 (citing, *inter alia*, *Easley*, 424 S.W.3d at 540–41).

[15]  *Id*. at 139.

Before we proceed, we wish to make a few brief observations regarding Jacobs's points of error on appeal and the State's ground for discretionary review.

Before the Sixth Court of Appeals, Jacobs claimed only that his "constitutionally guaranteed right to counsel" was violated by the trial court's voir dire limitation. He cited, in support of this argument, two opinions from this Court discussing the interplay between an accused's "right to counsel" and the trial court's authority "to impose reasonable restrictions on the exercise of voir dire examination."[16] He made no independent claim that the trial court's voir dire limitation ran afoul of a non-constitutional provision of law, such as a statute, rule, or caselaw precedent. Yet the court of appeals cited *Easley* for the proposition that, in the face of Jacobs's claim of voir-dire error, its first task was to determine whether the trial court had erred (by disallowing a proper commitment question),[17] and its second task was to determine whether that error was "constitutional" or not.[18]

This approach misreads *Easley*. *Easley* does not stand for the proposition that any time an appellant complains of an improper voir dire restriction, the reviewing court should classify that error as either "constitutional" or "nonconstitutional."[19] As we shall see, *Easley*

---

[16]  *McCarter v. State*, 837 S.W.2d 117, 119–20 (Tex. Crim. App. 1992); *Ex parte McKay*, 819 S.W.2d 478, 482 (Tex. Crim. App. 1990).

[17]  *See Standefer v. State*, 59 S.W.3d 177, 179–83 (Tex. Crim. App. 2001) (describing proper and improper commitment questions in voir dire).

[18]  *See Jacobs*, 506 S.W.3d at 133 (citing *Easley*, 424 S.W.3d at 540–41).

[19]  *Contra id.*

rejected the "overly broad conclusion that every restriction on counsel's voir dire presentation violates an accused's right to counsel."[20] It did not upend the elementary rule that, where a harm analysis is appropriate,[21] claims of constitutional error are subject to constitutional harm analysis and all other claims of error are subject to non-constitutional harm analysis.[22] The court below appears to have agreed with Jacobs that the trial court violated Article I, Section 10 of the Texas Constitution.[23] If that is correct, there is only one kind of harm analysis that could possibly apply: the constitutional error standard contained in Rule of Appellate Procedure 44.2(a). To hold otherwise would be to decide that, although the court of appeals found a constitutional violation, it might nevertheless be justified in applying the non-constitutional error standard contained in Rule 44.2(b). This cannot be.

So although the State purports to concede voir-dire error, we perceive the crux of the issue to be whether the trial court committed constitutional error by actually running afoul of one of the two constitutional provisions the court of appeals thought to have been raised by Jacobs on appeal.[24] The upshot of this approach is that if we agree that the trial court

---

[20] *Easley*, 424 S.W.3d at 538.

[21] *See Cain v. State*, 947 S.W.2d 262, 264 (Tex. Crim. App. 1997) (acknowledging that some constitutional errors are "categorically immune to a harmless error analysis").

[22] *See* TEX. R. APP. P. 44.2.

[23] *Jacobs*, 506 S.W.3d at 139 ("We agree with our sister courts of appeal that having an unqualified veniremember on the jury is a violation of the defendant's right to an impartial jury. Therefore, we find the error in this case is constitutional error[.]").

[24] *Jacobs*, 506 S.W.3d at 130 n.3 (citing TEX. CONST. art. I, § 10).

violated Jacobs's constitutional rights, we will necessarily affirm the court of appeals' decision to apply the constitutional-error harm standard. But if we disagree that a constitutional violation occurred, we will simply overrule Jacobs's claim of constitutional error and remand the case for the court of appeals to address any remaining issues. We turn now to an examination of the relevant constitutional provisions and their application to this case.

## III. ANALYSIS

"In our discretionary review capacity we review 'decisions' of the courts of appeals."[25] In this case, the court of appeals decided that the trial court's limitation impinged either Jacobs's Texas constitutional right to "trial by an impartial jury" or his Texas constitutional right "of being heard by himself or counsel."[26] Because the State has not complained of this approach, we will proceed on the assumption that it was proper. This means, however, that we must analyze the trial court's conduct under both of these constitutional provisions, to ensure that error did not occur under either.

### A. Trial by an Impartial Jury

#### I. Law

The Texas Constitution guarantees that, "In all criminal prosecutions the accused shall

---

[25] *Stringer v. State*, 241 S.W.3d 52, 59 (Tex. Crim. App. 2007) (citations omitted).

[26] *Jacobs*, 506 S.W.3d at 130 n.3, 132 (citing TEX. CONST. art. I, § 10).

have a speedy public trial by an impartial jury."[27] The Sixth Amendment to the United States Constitution similarly provides that, "In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed[.]"[28] We have previously noted that "there is no significant textual difference between the two constitutional provisions which would indicate that different standards of protection should be applied."[29] As a result, there is "no reason why the impartial-jury requirements in the two constitutions should be different."[30] "The people of Texas have the authority to provide greater protections to criminal defendants than those provided in the federal constitution. But as to trial by an impartial jury in criminal cases, they have not."[31] What, then, does the Sixth Amendment require when an accused seeks to inquire into a veniremember's potential biases?

The Supreme Court of the United States has long held that a trial judge has broad discretion in the manner it chooses to conduct voir dire,[32] both as to the topics that will be

---

[27] TEX. CONST. art. I, § 10.

[28] U.S. CONST. amend. VI.

[29] *Jones v. State*, 982 S.W.2d 386, 391 (Tex. Crim. App. 1998).

[30] *Id.*

[31] *Id.*

[32] *E.g.*, *Aldridge v. United States*, 283 U.S. 308, 310 (1931) ("In accordance with the existing practice, the questions to the prospective jurors were put by the court, and the court had a broad discretion as to the questions to be asked.").

addressed,[33] and the form and substance of the questions that will be employed to address them.[34]  There is no doubt that the Constitution places some limits on the trial court's otherwise broad discretion to conduct voir dire.[35]  But the instances in which the Supreme Court has said that the Constitution requires, not only that certain topics be covered, but that specific, detailed questions pertaining to that topic be asked, are notably rare.  The Fifth Circuit has noted that "[r]acial prejudice and widespread and provocative pretrial publicity have furnished the only grounds accepted to date by the Supreme Court for a constitutional challenge to the trial court's voir dire procedure."[36]  Since this summation, the Supreme Court has added that, in capital-punishment cases, the Constitution requires more than "general fairness and 'follow the law' questions" for the purpose of exposing "those in the

---

[33] *See, e.g.*, *Ristaino v. Ross*, 424 U.S. 589, 595–598 (1976) (trial judge "acted within the Constitution" when he declined a request, made by a defendant on trial for a cross-racial crime of violence, to question the prospective jurors about racial prejudice).

[34] *See, e.g.*, *Mu'Min v. Virginia*, 500 U.S. 415, 431 (1991) ("Petitioner in this case insists, as a matter of constitutional right, not only that the subject of possible bias from pretrial publicity be covered—which it was—but that questions specifically dealing with the content of what each juror has read be asked. . . . [W]e hold that the Due Process Clause of the Fourteenth Amendment does not reach this far[.]").

[35] *See, e.g.*, *Ham v. South Carolina*, 409 U.S. 524, 526–27 (1973) (trial judge violated the Due Process Clause of the Fourteenth Amendment by refusing to inquire into the possibility of racial prejudice in the venire, in a case permeated with racial issues).

[36] *King v. Lynaugh*, 850 F.2d 1055, 1059 (5th Cir. 1988) (referencing *Ham v. South Carolina*, 409 U.S. 524 (1973) (racial prejudice), and *Irvin v. Dowd*, 366 U.S. 717 (1961) (provocative pretrial publicity)).

venire who automatically would vote for the death penalty."[37]  But, at least outside these areas, "[t]he Constitution does not always entitle a defendant to have questions posed during Voir dire specifically directed to matters that conceivably might prejudice . . . him."[38] Instead, "the State's obligation . . . to impanel an impartial jury generally can be satisfied by less than an inquiry into [the] specific prejudice feared by the defendant."[39]

The Supreme Court has yet to provide an exhaustive list of the circumstances under which a trial court is "constitutionally compelled" to ask specific, rather than general, questions about the veniremembers' ability to remain impartial.[40]  But, as noted by several courts of appeals, it has hinted at a formula by which to determine whether the Constitution requires that a given subject be informed by specific questioning.  In *Mu'Min v. Virginia*, a case involving pervasive pretrial publicity, the Supreme Court noted: "To be constitutionally compelled, . . . it is not enough that such questions might be helpful.  Rather, the trial court's failure to ask these questions must render the defendant's trial fundamentally unfair."[41] Several circuits have applied this formulation in other contexts,[42] as have various other state

---

[37]  *Morgan v. Illinois*, 504 U.S. 719, 734–35 (1992).

[38]  *Ristaino*, 424 U.S. at 594 (citing *Ham*, 409 U.S. at 527–28).

[39]  *Id.* at 595 (citing *Ham*, 409 U.S. at 527–28) (footnote and citations omitted).

[40]  *Mu'Min*, 500 U.S. at 425–26.

[41]  *Id.*

[42]  *E.g.*, *United States v. Whitten*, 610 F.3d 168, 184 (2d Cir. 2010); *Beuke v. Houk*, 537 F.3d 618, 636–37 (6th Cir. 2008); *United States v. Orenuga*, 430 F.3d 1158, 1162–64 (D.C. Cir. 2005); *United States v. Greer*, 939 F.2d 1076, 1085 (5th Cir. 1991).

courts.[43]

In light of *Mu'Min* and the cases applying it, the prevailing standard for assessing whether a trial court's voir dire limitation violates the Sixth Amendment appears to be the following: The trial court retains broad discretion in conducting voir dire, and it does not abuse its discretion by refusing questions that only "might be helpful" in examining the venire for bias.[44] To constitute an abuse of discretion, the trial court's voir dire limitation must "render the defendant's trial fundamentally unfair."[45] Accordingly, per *Jones*, this is the standard that should apply in a comparable claim under the Texas Constitution.[46]

### ii. Application

Before the Sixth Court of Appeals, Jacobs's primary argument was that "[s]ome potential jurors might have substantially different opinions of someone with a prior 'sexual offense' conviction as opposed to a prior 'assaultive offense' conviction[.]"[47] But it was Jacobs, not the trial judge, who proposed the adjective "assaultive" in describing the relevant "offenses." The trial judge would have permitted Jacobs to inquire into the veniremembers'

---

[43] *E.g.*, *State v. Stanko*, 658 S.E.2d 94, 96–97 (S.C. 2008); *Hayes v. Commonwealth*, 175 S.W.3d 574, 581–87 (Ky. 2005); *People v. Stewart*, 93 P.3d 271, 294–96 (Cal. 2004); *People v. Terrell*, 708 N.E.2d 309, 318–19 (Ill. 1998).

[44] *Mu'Min*, 500 U.S. at 425–26.

[45] *Id.*

[46] *Jones*, 982 S.W.2d at 391.

[47] Appellant's Brief in the Sixth Court of Appeals at 28.

opinions regarding prior "felony" offenses or even unspecified prior "offenses" generally. With this understanding in mind, we note that we have previously addressed a trial-judge-imposed limitation very similar to the one at issue in this case—albeit in a very different context.

In *Johnson v. State*, the defendant "sought to cross-examine two State's witnesses for bias by informing the jury of the specific felony charges—and concomitant ranges of punishment—the witness[es] then faced in Harris County."[48] At the time they testified, the witnesses were under indictment for the offenses of felony-level theft and robbery.[49] But the trial court ordered Johnson to "limit[] his cross-examination to exposing the fact that the witnesses stood accused . . . of certain unspecified 'felonies.'"[50] Johnson argued that this limitation violated his Sixth Amendment right to examine these witnesses for bias, but we were unpersuaded. "[W]ith respect to the 'nature' of the witnesses' alleged offenses," we observed, "[t]he fact that a witness stands accused of (for example) 'felony theft' would not, if presented to the jury, make that witness seem any more prone to testifying favorably for the State than a similarly situated witness who stood accused only of some unspecified 'felony.'"[51] And while we conceded that knowledge of "the range of punishment attendant

---

[48] 433 S.W.3d 546, 548 (Tex. Crim. App. 2014).

[49] *Id.* at 549.

[50] *Id.* at 548.

[51] *Id.* at 554.

to a charged offense does have an incrementally greater impact on the jury's ability to assess the witness's motive to alter or fabricate his testimony,"[52] its significance in comparison to the questioning allowed was just that—merely "incremental[]."[53] Because we could not say that "the trial court's limitation so deprived the appellant of an important untrod avenue of examining the witnesses for bias as to leave his overall opportunity for cross-examination ineffective," we found no abuse of discretion, and no Confrontation-Clause violation, in the trial court's ruling.[54]

Although *Johnson* speaks to a different constitutional right, our reasoning is similar here. There is certainly a logical connection between the more-detailed questions Jacobs hoped to ask and the "specific prejudice" he hoped to expose.[55] In this sense, at least, use of the adjective "sexual" may well have proven "helpful" to Jacobs's cause.[56] But under the trial judge's allowed questioning, Jacobs was able to commit every veniremember to the blanket proposition that "unrelated offenses [do not] change the State's burden of proof." This, albeit on a level more general than he might have preferred, was the very "prejudice feared by the defendant,"[57] and the trial judge's ruling permitted Jacobs ample opportunity

---

[52] *Id.*

[53] *Id.* at 557.

[54] *Id.*

[55] *Ristaino*, 424 U.S. at 595; *see also Johnson*, 433 S.W.3d at 553.

[56] *Mu'Min*, 500 U.S. at 425.

[57] *Ristaino*, 424 U.S. at 595.

to explore it. Any further specificity would have "tend[ed] only marginally to enhance" Jacobs's ability to explore the veniremembers' biases against repeat offenders.[58] And the trial judge did not abuse his discretion in determining that any marginal benefit Jacobs might gain by this added detail would be outweighed by the risk of exposing the jury to the particular facts of the case before they were sworn. Under these circumstances, we cannot say that the trial judge's limitation "render[ed] the defendant's trial fundamentally unfair."[59]

## B. Being Heard by Counsel

There remains the question of whether the trial judge's limitation infringed Jacobs's Texas constitutional right "of being heard by . . . counsel."[60] There was a time in our jurisprudence when we were inclined to treat any limitation on "proper" questioning in voir dire as, not only a *per se* violation of this constitutional right,[61] but also as an error that was immune from harm analysis.[62] Eventually we decided that these kinds of errors were not categorically immune from a harm analysis—yet we continued to view them as implicating

---

[58] *Johnson*, 433 S.W.3d at 557.

[59] *Mu'Min*, 500 U.S. at 426.

[60] TEX. CONST. art. I, § 10.

[61] *E.g.*, *McKay*, 819 S.W.2d at 483 ("We have consistently held that the right to representation as afforded under Article I, Section 10 of the Texas Constitution includes the right to properly question prospective jurors during voir dire[.]").

[62] *Nunfio v. State*, 808 S.W.2d 482, 485 (Tex. Crim. App. 1991) ("We hold that error in the denial of a proper question which prevents the intelligent exercise of one's peremptory challenges constitutes an abuse of discretion and is not subject to a harm analysis[.]"), *overruled by Gonzalez v. State*, 994 S.W.2d 170, 171–72 (Tex. Crim. App. 1999).

the Texas constitutional right "of being heard" by counsel.[63]  But, in a line of cases culminating in *Easley v. State*, we finally and unanimously rejected the "overly broad conclusion that every restriction on counsel's voir dire presentation violates an accused's right to counsel."[64]  So, after *Easley*, at least some trial-judge-imposed limitations on voir dire will be found not to "run[] afoul of the Texas Constitution."[65]  We cautioned, however, that this conclusion was quite "different from holding that" such errors will never be "of constitutional magnitude."[66]  Indeed, we expressly granted that "[t]here may be instances when a judge's limitation on voir dire is so substantial as to warrant labeling the error as constitutional" in dimension.[67]  But we carefully avoided describing when or how such a constitutional violation might occur, or which constitutional provisions would be implicated by any such limitation.

*Easley* thus left open the possibility that some limitations of voir dire might violate an accused's Texas constitutional right "of being heard" by counsel.  But even if this is so, we would not be inclined to construe that right as being more solicitous of voir-dire questioning than the constitutional provision that speaks most directly to this issue—the

---

[63] *Gonzalez*, 994 S.W.2d at 171–72 (Tex. Crim. App. 1999) (citing *Cain v. State*, 947 S.W.2d 262, 264 (Tex. Crim. App. 1997)).

[64] *Easley*, 424 S.W.3d at 538.

[65] *Id.* at 537.

[66] *Id.* at 541.

[67] *Id.*

provision protecting an accused's right to an "impartial jury."[68] The reason for this is simple: "[I]f we were to associate any trial error relative to counsel's ability to ensure the accused is 'heard' at trial, we would be forced to reach the illogical conclusion that nearly every error in a criminal case is of constitutional dimension because the error, in some measure, deprived the accused of his right to counsel."[69] Any reason we might give for construing the right "of being heard" to be more protective of a defendant's ability to pose questions in voir dire than his right to trial by an impartial jury could be applied with equal force to any number of federal or state constitutional protections. We are unwilling to go this far.

So we do not question *Easley*'s statement that "[t]here may be instances when a judge's limitation on voir dire is so substantial as to warrant labeling the error as constitutional error subject to a Rule 44.2(a) harm analysis."[70] But we wish to clarify that neither the Texas constitutional guarantee of "trial by an impartial jury" nor the Texas constitutional guarantee "of being heard" by counsel grants a more expansive right to pose specific questions in jury selection than what is already guaranteed by the federal Constitution. While the right "of being heard" under the Texas Constitution arguably affords some procedural advantages in voir dire that the Sixth Amendment does not,[71] we will not

---

[68] TEX. CONST. art. I, § 10.

[69] *Easley*, 424 S.W.3d at 541.

[70] *Id.*

[71] *See, e.g.*, *Jones v. State*, 223 S.W.3d 379, 383 (Tex. Crim. App. 2007) ("[T]he right to be heard at voir dire is a right to *participate* in the proceedings in a certain way.")

construe the former to require more in the way of substantive questioning than the latter.

## IV. CONCLUSION

We reiterate that this opinion addresses only the standard to be applied in claims of constitutional error arising from a trial court prohibiting specific questions in voir dire. Other species of constitutional errors occurring in voir dire are unaffected by this opinion.[72] Our holding also leaves undisturbed any caselaw describing how to address claims of non-constitutional voir-dire error.[73] Because Jacobs has claimed only a constitutional violation, we need not take up any such issue today. The court of appeals' judgment is reversed and the case is remanded for proceedings not inconsistent with this opinion.

Delivered: October 10, 2018

Publish

---

(emphasis in original); *De La Rosa v. State*, 414 S.W.2d 668, 671 (Tex. Crim. App. 1967) ("[T]he right of being heard . . . carries with it the right of counsel to interrogate the members of the jury panel to the end that he may form his own conclusion, after his personal contact with the juror, as to whether in counsel's judgment he would be acceptable to him[.]").

[72] *See supra* note 71.

[73] *See, e.g.*, *Standefer*, 59 S.W.3d at 179–83.