

# IN THE
# TENTH COURT OF APPEALS

### No. 10-22-00104-CR
### No. 10-22-00105-CR

**JOSEPHUS DEMETRIUS GARRETT,**

                                                                        **Appellant**

 **v.**

**THE STATE OF TEXAS,**

                                                                        **Appellee**

### From the 66th District Court
### Hill County, Texas
### Trial Court Nos. F132-19 and F133-19

## MEMORANDUM OPINION

In one proceeding, Josephus Demetrius Garrett was convicted of two separate offenses of burglary of a habitation, enhanced, and sentenced to 95 years and 15 years in prison, respectively. *See* TEX. PENAL CODE §§ 30.02; 12.42. Because Garrett was not harmed by the introduction into evidence of an oral admission to one of the offenses, the trial court's judgment is affirmed.

BACKGROUND

In the early morning hours of January 28, 2019, Hill County Sheriff's Office deputies responded to incidents at two separate residences on the same highway in Blum, Texas. Both incidents were reported close in time to each other, and the residences were approximately 2.5 miles from each other. Deputy Thurston responded to the incident at the Laurence residence (appellate case number 10-22-00105-CR) while Deputy Spigener responded to the incident at the Sanders residence (appellate case number 10-22-00104-CR).

When Thurston arrived at the Laurence residence, he found that the residence had been entered and completely ransacked. Furniture and appliances in the house were turned over; other items were strewn everywhere; dishes were smashed; windows were broken; and dog kennels with dogs in them were tossed outside. A brick was thrown through a pickup windshield outside, and the headlights were smashed. The damage to the house was estimated at a little less than $30,000.

At the Sanders residence, Deputy Spigener found the relatives of the homeowners detaining a man, at gunpoint, who had entered the house by breaking in the back door. The man had also been stabbed with a serrated bread knife by the homeowners' 12-year-old daughter after the man broke into the house. Spigener identified the man as Garrett. He knew Garrett had recently been in jail and was surprised at Garrett's presence in the Sanders's home.

Knowing an incident had also occurred at the Laurence residence, but not knowing exactly what had happened, and knowing Garrett knew the Laurence

homeowner, Spigener asked Garrett if Garrett "knew what happened over there [at the Laurence residence]."[1]  Garrett replied, "I did it; I tore up the house."  Spigener testified that at that time, he placed Garrett into custody.

**ORAL STATEMENT**

In his sole issue on appeal, Garrett contends the trial court improperly admitted Garrett's oral statement to Deputy Spigener that he "did it;" he "tore up the" Laurence residence because, Garrett alleges, the statement was made while Garrett was in custody.

Prior to trial, a hearing was held on the State's intent, pursuant to article 38.22, section 5 of the Texas Code of Criminal Procedure, to admit Garrett's oral statement to Spigener.  Spigener was the only witness at the hearing and testified to the circumstances surrounding Garrett's admission to damaging the Laurence home.  The trial court took the matter under advisement and, later the same day, determined Garrett was not in custody when he made the statement.

Oral confessions of guilt or oral admissions against interest made by a suspect who is in custody are not admissible unless made in compliance with the provisions of article 38.22 of the Texas Code of Criminal Procedure.  *See* TEX. CODE CRIM. PROC. art. 38.22; *see also Shiflet v. State*, 732 S.W.2d 622, 623 (Tex. Crim. App. 1985).  However, if a person makes an oral confession of guilt or an oral admission against interest while not in custody, a different rule applies.  *See Shiflet*, 732 S.W.2d at 623.  Article 38.22, section 5 provides that: "Nothing in this article precludes the admission of a statement made by

---

[1] This was a paraphrase of the question.  The deputy did not recall exactly how he asked Garrett the question, and Garrett did not testify at the guilt/innocence phase of the trial.

the accused . . . that does not stem from custodial interrogation . . . ." TEX. CODE CRIM. PROC. art. 38.22, § 5. Thus, an oral confession or an oral admission against interest that does not stem from custodial interrogation, and is given freely, voluntarily, and without compulsion or persuasion, is admissible evidence against the accused. *See Shiflet*, 732 S.W.2d at 623.

Garrett argues on appeal that because Garrett was held at gunpoint and knifepoint by relatives of the homeowners when Deputy Spigener arrived, Garrett was not free to go. At that point, Garrett had been injured and was sitting on the floor. Thus, Garrett contends, he was in custody when Deputy Spigener asked what had happened at the Laurence residence.

The State argues Deputy Spigener's question did not amount to custodial interrogation because the question regarding an event of which the deputy had no specifics was broad, Garrett was not injured badly enough to be unable to leave, and Garrett was not being held by law enforcement, but rather by relatives of the homeowners.

Assuming without deciding the trial court erred in its determination that Garrett was not in custody, we turn to whether the admission of the statement caused Garrett harm.

**HARM**

Where a harm analysis is appropriate, the general rule requires that claims of constitutional error are subject to a constitutional harm analysis and all other claims of error are subject to a non-constitutional harm analysis. *See* TEX. R. APP. P. 44.2; *Jacobs v.*

*State*, 560 S.W.3d 205, 209 (Tex. Crim. App. 2018). Constitutional error requires reversal unless the reviewing court "determines beyond a reasonable doubt that the error did not contribute to the conviction or punishment." TEX. R. APP. P. 44.2(a). Non-constitutional error requires reversal only if the error affects an appellant's substantial rights—*i.e.*, reversal is required when the error has a substantial and injurious effect or influence in determining the jury's verdict. *Id*. (b); *Cook v. State*, 665 S.W.3d 595, 599 (Tex. Crim. App. 2023). In other words, a substantial right is not affected if we have fair assurance from an examination of the record as a whole that the error did not influence the jury, or had but a slight effect. *Sandoval v. State*, 665 S.W.3d 496, 516 (Tex. Crim. App. 2022). If a defendant's statement is admitted in violation of *Miranda*[2] or due process, we apply the constitutional harm analysis. *Id*. at 515. If it has been admitted only in violation of a statute, then we apply the non-constitutional harm analysis. *Id*.

Although *Miranda* was mentioned in his brief, Garrett did not assert a violation of *Miranda* or due process, which would require an application of the constitutional harm analysis, in either his brief or at the hearing regarding the State's intent to admit the statement. *Sandoval v. State*, 665 S.W.3d 496, 515 (Tex. Crim. App. 2022). Rather, Garrett's issue, as was his argument at the pre-trial hearing regarding the introduction of his oral statements, is couched in terms of a violation of article 38.22 of the Texas Code of Criminal Procedure. The State's notice of its intent to introduce Garrett's statement was filed

---

[2] *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602 (1966).

pursuant to article 38.22; no motion to suppress was filed. A hearing was requested[3] and held specifically on the State's notice; not on a motion to suppress. Further, no argument was made that *Miranda* or Garrett's right to due process was violated. Therefore, we review the question of harm pursuant to rule 44.2(b) of the Texas Rules of Appellate Procedure, the non-constitutional harm analysis, which requires reversal only if the error affects an appellant's substantial rights. *See* TEX. R. APP. P. 44.2(b).

As stated earlier, non-constitutional errors require reversal only if they affect an appellant's substantial rights—*i.e.*, when they have a substantial and injurious effect or influence in determining the jury's verdict. *Cook v. State*, 665 S.W.3d 595, 599 (Tex. Crim. App. 2023). In making this determination, the following nonexclusive factors are considered: the character of the alleged error and how it might be considered in connection with other evidence; the nature of the evidence supporting the verdict; the existence and degree of additional evidence indicating guilt; whether the State emphasized the complained-of error; the trial court's instructions; the theory of the case; and, relevant voir dire. *Id.*

### Laurence Offense

Because the State had received a favorable ruling on the admission during pretrial, the State naturally presented testimony regarding the admission during the guilt/ innocence phase of the trial. The State also mentioned the admission during its close of the guilt/innocence phase. But so did Garrett's counsel; and during counsel's close, he

---

[3] The request was not made a part of the appellate record.

argued that under the evidence, Garrett did not confess; he only admitted to being at the residence. The admission was not mentioned in voir dire or in opening statements. Although while deliberating guilt/innocence, the jury asked in a note to have Garrett's admission read back to them, the trial court refused to do so.

But, separate and apart from Garrett's admission, other evidence tied him to the crime at the Laurence house. Laurence and her son testified that Garrett had been a problem at a gathering at the house the night before. Laurence shut down the gathering because of Garrett's behavior and told everyone there to go home. Laurence also left her residence to take someone else home; and when she returned in the early morning hours the next day, she discovered her house was destroyed. Laurence's son returned to his mother's house and went through the house. In the midst of the destruction, he found Garrett's cell phone. He also discovered Garrett's name written on the wall in his daughter's room along with his daughter's name.[4] He took Garrett's phone, made a video of the damage to the house and Garrett's name on the bedroom wall, and, posing as Garrett, posted the video to Garrett's social media page. A copy of the video posted was shown to the jury. Although a deputy going through the house and taking photos of the damage did not see or take a picture of Garrett's name written on the wall, he did not go into the daughter's room because he only took pictures of what was "damaged." At trial, when viewing a photo the deputy took of the hallway leading up to the daughter's room and when the photo was zoomed in, the deputy could see something

---

[4] Laurence's granddaughter sometimes stayed with Laurence and had her own room.

marked on the wall of the daughter's bedroom.

Thus, when reviewing the record as a whole, we do not find the error in admitting Garrett's statement, if it was error, affected Garrett's substantial rights as to the Laurence offense.

*The Sanders Offense*

There is no dispute that Garrett broke into the Sanders's house. Thus, Garrett asserts his substantial rights were affected as to punishment in that case. The jury recommended punishment at 95 years in prison. Garrett's statement about causing the damage at the Laurence house had been admitted for all purposes, even for the Sanders incident. But the jury had also heard that Garrett broke into the house, breaking down the back door and destroying the door jam, in the early morning hours while Mrs. Sanders and her two daughters were inside. Mr. Sanders, who was a local school principal, was out of town. Mrs. Sanders repeatedly yelled at Garrett to get out. He would not. He insisted on seeing his mother and getting some water to drink. Mrs. Sanders called her father-in-law and brother-in-law who lived just down the road while she was still ordering Garrett out of the house. She told her youngest daughter to hide; but rather than hiding, the daughter ran around the outside of the house, came in behind Garrett, and stabbed him in the back with a bread knife. Her relatives arrived shortly thereafter to hold Garrett at gunpoint and knifepoint.

Other information the jury heard is also worth mentioning in our review of the record. Using profanity, Garrett refused medical treatment for his injuries. EMS believed he was intoxicated. Garrett cussed at Deputy Spigener once Garrett was placed in the

patrol car. The Sanders's youngest daughter was traumatized by her attempt to defend her house by stabbing Garrett in the back.

The Sanders offense was enhanced by a prior felony, a robbery; and the jury heard about Garrett's criminal history: a juvenile adjudication, four state-jail felony convictions including a conviction for forgery, and three misdemeanor convictions including a criminal trespass conviction, the confinement for which Garrett had just been released. And because the offense was a home invasion, the punishment range started at a higher minimum of years in prison than the Laurence offense; 15 years versus 5 years.

Thus, when reviewing the record as a whole, we do not find the error in admitting Garrett's statement, if it was error, affected Garrett's substantial rights as to the Sanders offense.

CONCLUSION

Having found Garrett's substantial rights were not affected by the admission of his oral statement, we conclude Garrett was not harmed, and his sole issue is overruled.

We affirm the trial court's judgment.


TOM GRAY
Chief Justice

Before Chief Justice Gray,
     Justice Johnson, and
     Justice Smith
Affirmed
Opinion delivered and filed January 25, 2024
Do not publish
[CRPM]
[CR25]

