

In The

Court of Appeals

Seventh District of Texas at Amarillo

No. 07-24-00299-CR

NATHANIEL NEUSER, APPELLANT

V.

THE STATE OF TEXAS, APPELLEE

On Appeal from the 140th District Court
Lubbock County, Texas
Trial Court No. DC-2023-CR-2692, Honorable Douglas H. Freitag, Presiding

November 5, 2025

OPINION

Before QUINN, C.J., and DOSS and YARBROUGH, JJ.

Nathaniel Neuser appeals from his multiple convictions relating to indecency with and injury to a child. Six issues pend for review. We address the first, for it is dispositive of the appeal and reverse.

*Background*

The circumstances concern sexual and physical abuse suffered by a four-year-old child, JN, at the hands of his biological parents and grandmother. Appellant Neuser was JN's biological father.

At trial on charges of indecency and injury to a child, medical staff testified that neurological injuries as a consequence of the chronic abuse suffered by JN resulted in global delays in his mental development. As one doctor explained, the child "has a damaged developing brain with multiple neurodevelopmental disorders" impacting every facet of his life. "And in this case it's motor, it's social, it's emotional, it's behavioral, it's cognitive. It's every aspect of this child's functioning." The defensive theory advanced below focused on some genetic abnormality that could be the cause of JN's neurological, mental, and physiological deficits.

The jury found appellant guilty of indecency with a child by sexual contact (a lesser-included offense of aggravated sexual assault of a child, as charged); indecency with a child by sexual contact; injury to child by an act causing serious mental deficiency, impairment, or injury (using his hand as a deadly weapon); and injury to a child by omission causing serious mental deficiency, impairment, or injury. Appellant appealed and presented six issues for our review.

### Issue One: Voir Dire

Appellant initially asserts that the trial court improperly limited his voir dire and denied his challenges for cause. Allegedly, "[d]efense counsel attempted to further question several jurors who admitted they could not consider the low end of the punishment range or would 'always or almost always' believe police over other witnesses. The court, however, deemed these inquiries improper, refused to allow further examination, and denied the challenges for cause." We sustain the issue.[1]

---

[1] The State argues that appellant failed to preserve his complaint. He allegedly so failed because he did not inform the court of the specific question or questions he wanted to ask. Yet, the circumstances at bar liken not to a situation where the opportunity to ask a particular question was denied. Rather, they compare to a situation where the trial court refused to undertake individualized questioning of jurors who

### *Bias Regarding Punishment*

Our review begins with voir dire on punishment. Comments from the trial court best frame the debate at bar. The court rejected defense counsel's request for individualized questioning of those veniremen who voiced hesitance in their ability to "foresee" circumstances in which certain punishment would "be appropriate." It explained as follows:

1) Well, just so we're clear, Mr. Reese asked can they ***foresee something being an appropriate punishment***. That is not an appropriate question to disqualify a juror by being able to consider the full range of punishment. Can you see something as being the appropriate punishment is not can you consider the full range of punishment. I ain't talking to everybody that said ***they wouldn't consider something inappropriate***. That's an improper commitment question and not a reason to disqualify a juror. That was all of the injury questions were phrased that way[;]

2) On the injury questions ***you asked can you foresee something as being an appropriate punishment. Not could they consider the range of punishment***. They could consider it and still decide it's not appropriate[;] and,

3) You said, "Can you foresee it being appropriate?" I wrote it down.

Prior to that, counsel for appellant asked the venire the following:

1) If you found somebody guilty of any of those – I mean, that's – you know, aggravated sexual assault of a child, right? If you found somebody guilty, you're back there beyond a reasonable doubt, is there any set of circumstances where you couldn't – ***the range of punishment is five to 99 or life, right? Is there anybody here that based on what I'm telling you you could not consider the full range of punishment including five years in the penitentiary***?[;]

---

indicated impermissible bias. The questions asked by defense counsel purportedly did not trigger the need for further inquiry, according to the court. They did not because it viewed them as improper questions. Yet, they actually covered a very topic deemed appropriate by our Court of Criminal Appeals, as we will explain. And the responses thereto indicated bias warranting further questioning. Simply put, the trial court knew of what defense counsel desired but denied it. So, error was preserved. TEX. R. APP. P. 33.1(a). Had appellant so illustrated in responding to the State's contention, he could have avoided the use of such distasteful and non-professional characterizations of that contention as requiring "vomit" and being "ticky-tacky." Preservation of error generally is mandatory, even though an appellant may think otherwise.

2) Do y'all understand the question I'm asking? . . . Intentionally or knowingly, go back there and you're in the jury room, you've found somebody guilty of aggravated sexual assault of a child through any means that we just talked about, right, ***and you could not consider the full range of punishment including the lower end***?[;]

3) And there is all kinds of circumstances, right? But, you know, you found guilty aggravated sexual assault of a child, ***can you consider the full range including the lower end of five***? Anybody over here can't do it, just raise your placard.[;]

4) You got – and – so you've gone into the back, you found a defendant guilty of indecency with a child, all right, by sexual contact. Is there anybody here that ***can't foresee a set of circumstances where the lower end of the punishment range would be appropriate?*** Just can't do it. Just can't foresee – "I understand there's all different kinds of circumstances, but just ***I can't foresee any set of circumstances where the lower end would be appropriate***"?[;]

5) And the range of punishment for that one is five to 99 years in the penitentiary, or probation. And probation is only eligible if they're up to 10 years. 10 years or lower on the sentence, okay? You have to be able to consider the full range of punishment, and that's anywhere from five to 99 years in the penitentiary up to and including probation if you sentence them to under 10, okay? Everybody understand what I'm asking? Intentionally or knowingly causing serious bodily injury by act or omission, serious bodily injury, serious mental impairment, all right? You're back in that jury room, you've found somebody guilty of intentionally or knowingly causing serious bodily injury, serious mental impairment, is there anybody on this side that couldn't consider – you know, it's like, ***"I understand. I understand what we found him guilty of. I just can't foresee, I can't think of a set of circumstances where the lower end of the punishment range, that being five and/or probation would be appropriate. Just can't foresee it, you know. I just can't do it. I can't foresee it.***"[;]

6) [I]t's meaningful consideration to ***the full range of punishment***[;]

7) Some people just, "I know there's different circumstances. I know there's all different kind of facts, but I can't give meaningful consideration because ***I can't think of a situation where it would be appropriate, where the lower end including probation would be appropriate***." Anybody on this side feel like that when we're talking about intentionally or knowingly by act or omission causing serious bodily injury, serious mental impairment?[;] [and]

4

8) [Regarding reckless injury to a child and asking]: So same question. Can anybody here – and the law says you've got to consider the full range of punishment, two to 20 years and up to and including probation if the sentence is 10 years or less. ***Does anybody here cannot foresee a set of circumstances where the lower end of that punishment range would be appropriate including probation***?

(Emphasis added). With this in mind, we observe the following.

Asking veniremen if they could consider the full range of punishment falls within the realm of a permissible commitment question. *See Weaver v. State*, 355 S.W.3d 911, 913 (Tex. App.—Amarillo 2011, pet. ref'd) (stating that "[n]ot all commitment questions are improper" and "[f]or instance, asking a juror if he is able to 'consider' the full range of punishment is a proper commitment question"). And, that counsel alluded to probation or the lower end of the punishment spectrum when inquiring if the pool members could consider the full range is similarly proper; such queries serve to highlight the ends of the spectrum. As said in *Cardenas v. State*, 325 S.W.3d 179, 184 (Tex. Crim. App. 2010), "[b]oth the State and defense are entitled to jurors who can consider the entire range of punishment for the particular . . . offense—i.e., from the maximum to the minimum and all points in between.") *Id.* at 184. Had counsel structured his questions as inquiring if venire members could "give" a certain punishment, that would be improper, however. *See Weaver*, 355 S.W.3d at 913 (stating that "while jurors must be able to 'consider' the full range of punishment, they cannot be required to commit to 'giving' a certain punishment"). Yet, he did not.

Rather, defense counsel began interspersing his queries with phrases like "foresee a set of circumstances" and "appropriate punishment." And, it was those phrases deemed objectionable by the trial court. This was so despite the court utilizing rather identical language when individually questioning venire members other than those designated by

5

defense counsel and who indicated concern with considering the full range of punishment. For instance, it asked: 1) "***can you envision a scenario*** where you were on a jury that has convicted someone . . . where you could consider the ***appropriate punishment*** as being 25 years imprisonment, or . . . 25 years imprisonment as an ***appropriate punishment***?"; 2) "***can you envision a scenario*** where you're on a jury that convicted someone . . . could [you] give meaningful consideration to 25 years in the penitentiary as the ***appropriate punishment***?"; 3) "***is there a scenario*** where you could consider . . . could ***consider the appropriate punishment*** as a minimum being five years confinement"; 4) "***[i]s there a scenario*** you can think of where . . . where you [can] consider two years as ***the appropriate punishment***?"; 5) "***is there a scenario*** that you – where you could consider 20 years as the ***appropriate punishment***?"; 6) "***can you envision a scenario*** where you're on a jury that convicts . . . where you could consider two years as an ***appropriate punishment***?"; 7) "[t]he question I have is***, is there a scenario*** where you could consider where you're on a jury that's convicted someone . . . where you could ***consider the appropriate punishment*** as being two years confinement"; and 8) could you "***envision a scenario where*** you were on a jury and you had convicted someone of that charge and you could consider life imprisonment ***as an appropriate punishment***?" (Emphasis added). "Envision a scenario" differs in no substantive way from "foresee a set of circumstances" or "think of a situation." All three invite the listener to perceive scenarios, circumstances, or situations which may influence his or her decision. Reasonable minds cannot interpret them otherwise given the totality of circumstances before us. And, more importantly, the trial court utilized that verbiage

6

in deciding whether the venire members it opted to question were lawfully capable of serving.

In returning to *Cardenas*, we see that inquires of the ilk uttered by both defense counsel and the trial court are proper. The statement that "[j]urors must be able to consider both '*a situation* in which the minimum penalty *would be appropriate* and . . . a situation in which the maximum penalty *would be appropriate*'" illustrates as much. *Id.* at 184 (emphasis added). Indeed, identical sentiment was voiced by the same court years earlier. *See Fuller v. State*, 829 S.W.2d 191, 200 (Tex. Crim. App. 1992) (en banc) (requiring jurors to "be able, in a sense, to conceive both of a situation in which the minimum penalty would be appropriate and of a situation in which the maximum penalty would be appropriate"); *see also Dixon v. State*, No. 07-16-00058-CR, 2022 Tex. App. LEXIS 268, at *36 (Tex. App.—Amarillo Jan. 13, 2022 pet. ref'd) (mem. op., not designated for publication) (same). Mandating that prospective jurors be able to consider "a situation in which" the minimum and maximum penalty would "be appropriate" necessarily invites inquiry into whether they can envision, foresee, or think of such situations. Given this, it is illogical to say one cannot ask if jurors could "envision," "foresee," or "think of" scenarios where the minimum, maximum, and everything in between would or would not be appropriate when controlling authorities require them to be able to do just that. *See Barajas v. State*, 93 S.W.3d 36, 38 (Tex. Crim. App. 2002) (en banc) (stating that a "question is proper if it seeks to discover a juror's views on an issue applicable to the case").

In so concluding, we do not ignore language in *Ladd v. State*, 3 S.W.3d 547, 559 (Tex. Crim. App. 1999), stating that "a venireman is not challengeable for cause simply

7

because he cannot immediately envision a scenario in which the minimum punishment would be appropriate." One must place the quote within context. The court followed it with the following: "[t]he mere fact that a venireman cannot envision such a scenario during voir dire does not indicate that he could not consider the minimum punishment if an appropriate scenario presented itself at trial." *Id.* The topic being addressed was whether the mere inability to immediately envision such scenarios rendered the venireman challengeable for cause. Nothing was said about such an inability being enough to relieve the trial court from engaging in individualized questioning to determine if the venireman could comply with *Cardenas* and *Fuller.* In other words, such an inability alone may not mean the venire members were, *ipso facto*, impermissibly biased. Nor does it mean that further individualized interrogation is impermissible or unwarranted. And, that is what appellant sought at bar . . . an opportunity for individualized questioning when particular venireman evinced such an inability. He was denied the chance to garner more information to effectively assess the bona fides of an ensuing challenge for cause. So, while *Ladd* is informative, it is not controlling under the circumstances at bar. And that seems particularly so here for one other reason.

The questions the *Ladd* court viewed as, not alone, forming the basis of a successful challenge were the very questions asked by the trial court to determine whether some veniremen were challengeable for cause per *Cardenas* and *Fuller.* So, while answers to them alone may not require removal of veniremen, the trial court itself deemed them relevant to and proper for assessing bias.

Additionally, defense counsel's questions did not cross the threshold into impermissible commitment queries. He omitted from them facts which would purportedly

8

warrant particular punishment. *See Cardenas*, 325 S.W.3d at 184 (stating that permissible boundaries may be crossed when the question includes verbiage asking about the consideration of particular punishment based on interjected evidentiary facts). They merely dealt with the consideration of the full range of punishment and envisioning, contemplating, thinking of, or foreseeing circumstances where that could or could not be done.

No doubt, a trial court has broad discretion to control voir dire. *Woodall v. State*, 350 S.W.3d 691, 695 (Tex. App.—Amarillo 2011, no pet.). That discretion extends to both the topics addressed and the form and substance of the questions used to address them. *Jacobs v. State*, 560 S.W.3d 205, 210 (Tex. Crim. App. 2018). So too does its discretion encompass the decision to perform individualized voir dire of particular venireman. *Rich v. State*, 160 S.W.3d 575, 577 (Tex. Crim. App. 2005). And, discretion is not abused so long as the decision falls within the zone of reasonable disagreement. *Weaver*, 355 S.W.3d at 913. Nor is it abused, in the voir dire setting, when the trial court refuses "questions that only 'might be helpful' in examining the venire for bias." *Jacobs*, 560 S.W.3d at 212. But, it is abused when the decision is arbitrary or unreasonable, *State v. Mechler*, 153 S.W.3d 435, 439–40 (Tex. Crim. App. 2005); when it prohibits asking a proper question about a proper area of inquiry, *Fuller*, 363 S.W.3d at 585 (quoting *Sells v. State*, 121 S.W.3d 748 (Tex. Crim. App. 2003)); *Barajas*, 93 S.W.3d at 38; when voir dire limitations render the defendant's trial fundamentally unfair, *Jacobs*, 560 S.W.3d at 212 (quoting *Mu'Min v. Virginia*, 500 U.S. 415, 425–26, 111 S. Ct. 1899, 114 L. Ed. 2d 493 (1991)); or when it applies the wrong legal standard, *Henderson v. State*, No. 02-15-

00397-CR, 2017 Tex. App. LEXIS 8971, at *38–39 (Tex. App.—Fort Worth Sept. 21, 2017, pet. ref'd) (mem. op., not designated for publication).

There is no question that the delving into the ability of venire members to envision situations where the full range of punishment would be "appropriate" is a proper area of inquiry. Again, our Court of Criminal Appeals held as much in *Cardenas* and *Fuller*. That defense counsel broached the subject matter with the venire is clear, as is that many in the pool evinced an inability to do the very thing required of jurors by *Cardenas* and *Fuller*. Equally clear is the trial court's 1) refusal to submit the latter veniremen to individualized questioning to assess their ability to comply with the dictate of *Cardenas* and *Fuller*, 2) decision to submit to individualized questioning those veniremen identified by the State as unable to consider the full range of punishment, and 3) utilization of questions virtually identical to those of defense counsel when interrogating the veniremen identified by the State. Defense counsel sought more than merely questioning which "may be helpful" but, rather, that which was necessary to determine the veniremen's ability to follow the law. And, together these circumstances, when coupled with the application of the wrong legal standard, moved the trial court's decision to forgo individualized questioning into the realm of exceeded or abused discretion. Thus, we sustain this aspect of Issue One.

### Bias Toward Certain Witness Testimony

Next, we turn to the second voir dire error voiced by appellant. It pertained to veniremen allegedly having a penchant to place greater credibility on testimony of law enforcement officers. As explained by appellant, the questions revealed that those veniremen "would always or almost always believe police officers over other witnesses."

10

Thus, they allegedly were subject to challenge for cause. We sustain this contention, as well.

During voir dire, defense counsel posed the questions: 1) "before hearing anything from them, do you believe the law enforcement officers to be more truthful than other witnesses?"; 2) "[s]o the fact they have a badge and a gun, you don't know anything about them, . . . would you believe that they're more truthful than other witnesses? Always or almost always?"; and 3) "[s]o again can you hold up – if you answered yes always, or almost always to that, please raise your card there." Approximately 19 veniremen raised their hands. Yet, the trial court agreed to individually question only one of them. It refused to do so regarding the others, stating 1) "I ain't bringing up everybody, because I agree the way that question was asked was not" proper; 2) the court did not "believe that to be a proper challenge for cause question the way it was asked"; 3) "[i]t's an improper question to ask is it's a balance – it's not the basis to disqualify somebody when you say I believe most of the time are truthful"; 4) "[a]lmost always isn't always"; and 5) "[i]t's already 4:43, we're not going to waste any more time." In other words, the trial court set the threshold for further questioning at whether the respondents said they would "always" assign greater credibility to law enforcement officials who testified. Time constraints prevented it from individually questioning those who merely indicated that they would "almost always" assign police personnel greater credibility. More importantly, of the 19 who raised their hand and did not undergo individualized questioning, one was selected for the jury while another was chosen as an alternate.

Veniremen are challengeable for cause if they cannot impartially judge the credibility of witnesses. *Ladd*, 3. S.W.3d at 560. "[T]his means only that jurors must be

11

open-minded and persuadable, with no extreme or absolute positions regarding the credibility of any witness." *Id.* They are not "challengeable for cause simply because they would give certain classes of witnesses a slight edge in terms of credibility." *Id.* This language does not focus on absolutes but, rather, establishes an acceptable range. If this were not so, then the Court of Criminal Appeals would have had no reason to include the terms "extreme" and "slight edge" in its description of the test. Those terms, when compared to "absolute," reveal that the bias favoring the certain class of witness need not be complete or total. Rather, it need only approach or fall close to that end of the spectrum to render it "extreme," and, therefore, impermissible. And, that was the tenor of defense counsel's questions: "[W]ould you believe that they're more truthful than other witnesses? *Always or almost always*?" The questions focused on the spectrum's end reflecting absolute and extreme, both of which reveal unacceptable bias. So, the questions posed were legitimate. They also were enough to render a venireman challengeable for cause if the responses given fell within that sector of the spectrum. And, therein lies the problem.

The responses provided by the 19 venireman alluded to above fell within the unacceptable end of the spectrum. That made the members subject to a legitimate challenge for cause unless rehabilitated. Yet, the trial court eschewed rehabilitative efforts in all but one instance. And, the remainder having underwent no further examination despite appellant's request, they remained within that end of the spectrum. More importantly, the venire member ultimately selected for the jury fell within the unacceptable end of the spectrum; she was not rehabilitated.

The record further illustrates that appellant completed the steps necessary to both preserve his complaint for review and obtain reversal. The trial court denied his requested

12

challenges for cause and denied his request for additional preemptory challenges after utilizing all those originally allotted against the unduly biased individuals. So too did appellant identify the impermissibly biased juror ultimately seated on the jury and which he would have struck if additional challenges were granted. *See Davis v. State*, 329 S.W.3d 798, 807 (Tex. Crim. App. 2010) (describing the steps to perfect for review denied challenges for cause and explaining that a defendant is harmed when using a preemptory strike to remove a venire member who the trial court erred in refusing to remove per a legitimate challenge for cause).

Having found reversible error, we sustain issue one. Our decision relieves us from having to address appellant's remaining issues. Thus, we reverse appellant's four convictions and judgments memorializing same and remand for further proceedings.


                                          Brian Quinn
                                          Chief Justice


Publish.


13